# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| CASEY FRALICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   16-cv-1015 |
| | ) | |
| BIAGGI'S INC., an Illinois corporation, | ) | Honorable Joe B. McDade |
| BIAGGI'S RISTORANTE ITALIANO | ) | |
| L.L.C., an Illinois Limited Liability | ) | |
| Company | ) | |
| | ) | |
| Defendants. | ) | |

# <u>ORDER & OPINION</u>

This matter is before the Court on a Motion for Summary Judgment filed by the Defendants, Biaggi's Inc. and Biaggi's Ristorante Italiano L.L.C. (collectively referred to as "Biaggi's"). The motion has been fully briefed and is ready for decision. For the reasons stated below, Biaggi's' Motion for Summary Judgment (Doc. 42) is DENIED.

## UNDISPUTED MATERIAL FACTS[1]

Plaintiff Casey Fralick is a former server at Biaggi's in Peoria, Illinois. Biaggi's hired Fralick as a server on or about June 27, 2012. During his employment at Biaggi's, Fralick had a reputation for dishonesty, creating drama, being manipulative, spreading rumors and not being able to stay out of anyone's business. But by the accounts of Biaggi's managers and other employees, Fralick was one of the

---

[1] These background facts are drawn from the parties' respective statements of material facts, and are undisputed unless otherwise indicated. Facts that are immaterial to the disposition of the Motion for Summary Judgment are excluded.

best servers. Managing Partner of Biaggi's in Peoria, Nathan Lane, had provided two very favorable letters of recommendation for Fralick, once in 2013 and once in February 2015. The 2013 and 2015 letters were identical in content.

On March 7, 2013, Plaintiff was arrested for a DUI and missed one shift because he was in jail. Fralick also took a few days off because he had a wrist and/or arm injury from the DUI accident. At the time of his DUI, Fralick was not FMLA eligible.

At some point in time, another Biaggi's employee, Misty Noll,[2] complained to Lane that Fralick and another employee were spreading false rumors about her, though Fralick contends that he did not start or spread any rumors about Noll. Lane counseled Fralick and the other employee about Noll's allegations and, since Noll was no longer employed by Biaggi's, told them to "just leave her alone." Nathan Lane Dep. 173:7-10. Later on, Fralick had an incident involving another fellow server, Janelle Payne, who complained to Lane that Fralick was "too hard" on her. Casey Fralick Dep. #1 45:3-10. Lane counseled Fralick "about office gossip and creating issues with other employees," and told Fralick "to come to work with a smile and leave it all at the door." *Id.* at 44:21-24, 45:14-18. On a third occasion, Lane had to counsel Fralick about his attitude. Fralick was stirring up drama, complaining about how servers were being cut from their shifts. On a fourth occasion, Lane again counseled Fralick about office gossip when Fralick accused Payne of not completing her work.

---

[2] Defendants refer to "Misty Noll" in their Motion for Summary Judgment, whereas Plaintiff refers to Misty Strode in his response. The Court will use "Noll" since it is Defendant's dispositive motion that is pending.

On March 9, 2015, Fralick attempted to contact Biaggi's Manager, Adam Crichton, to ask if he could have the day off. Chef Partner Mike Shinall answered the phone, and Fralick told him to tell Crichton that he wanted the day off. Fralick was released from his shift that day. Later that same day, Fralick was admitted to the hospital for attempting suicide by taking prescription medication. Fralick was assessed to have an unspecified type of depression disorder. Fralick was released from all his shifts at Biaggi's from March 11 through March 15, 2015.

On March 13, 2015, Fralick was released from the hospital without any work restrictions and was prepared to return to work. Fralick testified that he did not believe he was absent from work while hospitalized because his shifts were released. Fralick Dep. #1 77:7-12, 111:4-10; Fralick Dep. #2 53:3-7. Managers Lane and Crichton both concur with Fralick's testimony in this regard. Fralick immediately tried to get back on the schedule but was advised by Crichton that he first needed to speak with Lane. That same day, Fralick texted Lane, asking for a time when Plaintiff could speak with Lane about returning to work. Lane responded "I am in at 2 tomorrow[, March 14, 2015], off Sunday." Fralick responded, "Ok I will be in tomorrow thanks." Pl.'s Exh. 3.

On March 14, Lane waited for Fralick to arrive, but Fralick never contacted him or showed up.[3] Fralick contacted Lane on Monday morning (March 16). Lane told

---

[3] In his response to Defendant's Motion for Summary Judgment, Plaintiff repeatedly claims that there was no such "meeting" scheduled between Lane and Fralick on March 14, and that the text messages show that "Lane made no direct request of Plaintiff to have a meeting." Pl.'s Resp. 53-55. Plaintiff is trying to make a mess out of words. Whether it be called a "meeting" or something else, the undisputed facts show that Plaintiff (1) initiated conversation with Lane, (2) committed to coming to Biaggi's and speaking with Lane on March 14, and (3) then failed to show up without calling.

Fralick that he was not working that day but would be working Tuesday March 17 and could meet with Fralick then. Fralick advised Lane that he could not come in until after the St. Patrick's Day parade because he was riding on a float. Lane told Clay Baxter, his supervisor, that Fralick was a no call/no show on March 14 and had scheduled a meeting with him on March 17.

Fralick was suspected to have been involved in spreading a rumor about Biaggi's bartender Amanda Asslup-Morrow ("Morrow") and Shinall being involved in a sexual relationship. Both Morrow and Shinall were upset about the rumor, and Morrow approached Lane about it. Baxter and Biaggi's Human Resources Director, David Morris, instructed Lane to investigate. Lane testified that, prior to meeting with Fralick on March 17, 2015, he did not know if he was going to terminate Fralick's employment, but he "had a strong suspicion that Plaintiff was heavily involved in the rumors . . . . [And,] was worried about him and his pattern of . . . poor behavior and choices." Lane Dep. 77:1-3, 78:6-9. Fralick denies spreading the Morrow/Shinall rumor.

When Fralick arrived at Biaggi's on March 17, Lane spoke with Fralick alone. Lane first asked Fralick how he was doing to make sure he was doing okay. Fralick told Lane he was okay and ready to get back to work. Lane asked about Fralick's hospitalization. The parties dispute exactly what transpired during the first part of the March 17 meeting. Lane contends that he asked Fralick what happened, to which Fralick responded that "he took a pocket full of drugs and ended up in the hospital." Lane Dep. 105:2-4, 160:22-23. Fralick provides a very different account. Fralick

contends that Lane was asking him how he was "after what had happened" and that Lane said "if you ever need a place, you know, everyone here loves you, you can crash on my couch if you want to," and that Fralick was "family to everybody" at Biaggis. Fralick Dep. #2 77:22-78:6. Fralick contends that he and Lane discussed Fralick's well-being for a long part of the meeting. *Id.* at 78:6-7.

Lane also asked what happened on March 14, to which Fralick responded that when he arrived at Biaggi's during the afternoon of March 14, he saw that the parking lot was busy and decided not to go in the restaurant. Fralick Dep. #1 156:4-16. Fralick's phone died, so he went to the bar next door, Kouri's, and used someone's phone to call Lane, but he was put on hold and never connected with Lane. Fralick told Lane that he did not try to go inside Biaggi's that day because he was "[n]ot ready to be around that many people all at once" after his hospitalization. *Id.* at 157:24-158:1-20.

Lane next asked Fralick about the Shinall/Morrow rumor, but Fralick denied involvement in spreading or starting the rumor. Lane believed Fralick was lying to him about the March 14 meeting and about his knowledge of the Morrow/Shinall rumor because witnesses said they heard it from Fralick. Lane Dep. 105:16-106:3. Lane told Fralick that he had been in contact with the corporate office and they concurred with Lane that it was in Biaggi's best interest to part ways with Fralick. Lane terminated Fralick's employment effective March 17, 2015.

During the March 17 meeting, Fralick and Lane did not discuss the FMLA or whether his hospitalization was covered by the FMLA "because [Fralick] released his

shifts" and Lane did not ask for a doctor's note because he "didn't need to" because "[Fralick] was ready to return to work." Lane Dep. 160:11-15, 162:14-163:3. Fralick never filed any paperwork or raised the question of FMLA at any time with anyone at Biaggi's before or after his termination. Fralick knew that Biaggi's had granted other employees FMLA leave.

When firing an employee, Biaggi's has an Employee Termination Form that is completed by the person terminating the employee. Def. Exh. B, Dep. Exh. 4. The form contains a list of potential reasons for terminating an employee including violation of company policy, insubordination, negligence, alcohol/drug violations, incompetence, and "other." *Id.* There is a corresponding check mark line to the left of each potential reason. The form also contains a "Notes" section. On Fralick's termination document, Lane only checked the box next to "Absenteeism/Tardiness." *Id.* In the "Notes" section, Lane only identified "absenteeism" as the reason for Fralick's termination. *Id.* The parties dispute which "absent" day(s) factored into Lane's decision. Lane testified that "absenteeism" as marked on the termination form was in relation to the March 14 meeting. Lane claims he only put one reason for termination in the paperwork because the computer system only permits one reason, not multiple. Lane Dep. 93:17-94:5. Fralick testified that Lane told him he was terminated for different absences: (1) the time he missed during his DUI in 2013; and (2) the time he missed while hospitalized for his suicide attempt. Fralick Dep. #2 76:1-77:15.

In its Employee Handbook (the "Handbook"), Biaggi's lists the type of "Conduct Which May Result in Disciplinary Action or Termination." Def. Exh. A, Dep. Exh. 8 at 11. Employees are informed that their employment may be terminated for "excessive absenteeism or tardiness without a valid excuse." *Id.* The Handbook also provides that "[t]he attitude with which you approach your work and co-workers at Biaggi's is probably the single most important aspect of your employment." *Id.* at 6. Fralick's personnel file did not contain any documentation indicating that he had been counseled or disciplined while employed at Biaggi's. Furthermore, the Handbook contains a Family and Medical Leave policy. Under the policy, "[e]mployees who meet the eligibility requirement may take up to 12 weeks unpaid leave per 12 month period" for certain approved reasons, including a "serious health condition." *Id.* at 5.

On January 12, 2016, Fralick filed the instant lawsuit wherein he alleges that "[p]rior to, during, and subsequent to, . . . [his] hospitalization, Biaggi's failed to provide and denied Plaintiff any and all benefits Plaintiff was entitled to receive pursuant to [the] FMLA" and "maliciously, wrongfully, and willfully refused to grant Plaintiff any and all benefits he was entitled to receive pursuant to the FMLA." Pl.'s Compl. ¶¶ 77, 118. Fralick claims that his termination was in violation of the FMLA because his hospital stay was covered by the FMLA and he was terminated for that absence.

## STANDARD OF REVIEW

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." FED. R. CIV. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [it] bears the burden of proof at trial." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Merely stating that a fact is disputed is not enough to establish that such a fact is genuinely disputed. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c). Moreover, Central District of Illinois Local Rule 7.1(D)(1)(b) and (2)(b)(2) require citations to relevant documentary evidence. Courts are well within their discretion to treat unsupported facts as undisputed for purposes of deciding the summary judgment motion. FED. R. CIV. P. 56(e).

### PLAINTIFF'S CLAIMS UNDER THE FAMILY MEDICAL LEAVE ACT

The Family Medical Leave Act ("FMLA") "allows an eligible employee with a serious health condition that renders the employee unable to perform her position to take twelve workweeks of leave during each twelve-month period." *Goelzer v. Sheboygan County, Wis.*, 604 F.3d 987, 992 (7th Cir. 2010) (citing 29 U.S.C. § 2612(a)(1)(D)). An employer "may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise' any FMLA rights.'" *Id.* (citing § 2615(a)(1)). Furthermore, an employer may not retaliate against an employee for exercising rights protected by the FMLA. *Id.*; *see* § 2615(a)(2) (prohibiting "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter"); § 2615(b) (making it unlawful for any employer to discharge or discriminate against anyone for exercising rights under the FMLA); *see also Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir.2005) ("We have construed [§ 2615(a)(2) and (b)] to create a cause of action for retaliation."). Fralick

claims that Biaggi's retaliated against him for taking FMLA leave and interfered with his FMLA rights.

## I.    Fralick Had an FMLA-qualifying Serious Health Condition

"An employee is entitled to FMLA leave if she suffers from 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *See Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012) (quoting § 2612(a)(1)(D)). A "serious health condition" is defined by the applicable FMLA regulations as "an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical facility; or continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11).

An attempted suicide on March 9, 2015, followed by 4-5 days of inpatient hospital care, is "an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital." While hospitalized for several days, Fralick was unable to work at all during his scheduled shifts. *See* 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.123(a) ("An employee is 'unable to perform the functions of the position' [if] ... the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position...."). Therefore, as Biaggi's concedes (Doc. 50 at 27), it is undisputed that during the period of March 9, 2015, to March 13, 2015, Fralick suffered from a "serious health condition" that rendered him unable to perform his position. Whether Biaggi's had notice of Fralick's "serious health condition" is addressed below.

## II.     Plaintiff's Interference Claim

"To prevail on an FMLA-interference claim, a plaintiff must show that: '(1) he was eligible for FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take FMLA leave, and (5) his employer denied [or interfered with] . . . FMLA benefits to which he was entitled.'" *Preddie v. Bartholomew Consolidated Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015) (citing *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 635-36 (7th Cir. 2009)). "An interference claim does not require an employee to prove discriminatory intent on the part of the employer; rather, such a claim 'requires only proof that the employer denied the employee his or her entitlements under the Act.'" *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012) (quoting *Goelzer*, 604 F.3d at 995).

Fralick has established the first three elements. An "eligible employee" is defined as "an employee who has been employed for at least 12 months by the employer . . . and for at least 1,250 hours of service with such employer during the previous 12–month period." 29 U.S.C. § 2611(2). Fralick was employed by Biaggi's from June 27, 2012 to March 17, 2015, and Biaggi's does not allege that Fralick was ineligible. Furthermore, Biaggi's had an FMLA policy under which "[e]mployees who meet the eligibility requirement may take up to 12 weeks unpaid leave per 12 month period" for certain approved reasons, including a "serious health condition." As to the third element, "[a]n employee is entitled to FMLA leave if (1) he is afflicted with a 'serious health condition' and (2) that condition renders him unable to perform the

functions of his job." *Burnett v. LFW Inc.*, 472 F.3d 471, 477-78 (7th Cir. 2006) (citing 29 U.S.C. § 2612(a)(1)(D)). The Court has already determined, and Biaggi's concedes, that Fralick suffered from an FMLA-qualifying "serious health condition" that rendered him unable to perform the functions of his job.

The fourth and fifth elements are at the core of this dispute. Addressing the fourth element first, if Fralick did not give sufficient notice of his intent to take FMLA leave, then Biaggi's had no duty to give him leave. *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 724 (7th Cir. 2007). The FMLA requires employees to give notice "at least 30 days in advance" when the need for the leave is "foreseeable." *Aubuchon v. Knauf Fiberglass GMBH*, 359 F.3d 950, 951 (7th Cir.2004) (citations omitted); *see also* 29 C.F.R. § 825.302(a). In the event 30–days' notice cannot be given due to extenuating circumstances, "notice must be given as soon as practicable." 29 C.F.R. § 825.302(a). "[I]t is the employee's duty to place the employer on notice by giving the employer 'enough information to establish probable cause, as it were, to believe that [the employee] is entitled to FMLA leave,' which then shifts the burden to the employer to request additional information as needed." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015) (quoting *Aubuchon*, 359 F.3d at 953). "The notice requirements of the FMLA are not onerous," and "[t]he employee's notice obligation is satisfied so long as he provides information sufficient to show that he likely has an FMLA-qualifying condition." *Burnett*, 472 F.3d at 478-79; *see Aubuchon*, 359 F.3d at 953 ("[T]he employee's duty is merely to place the employer on notice of a *probable basis* for FMLA leave.") (emphasis added); *Collins v. NTN–Bower Corp.*, 272 F.3d

1006, 1008 (7th Cir. 2001) ("[E]mployers ... are entitled to the sort of notice that will inform them ... that the FMLA *may* apply.") (emphasis added).

On March 9, 2015, Fralick attempted to contact Biaggi's Manager, Adam Crichton, to ask if he could have the day off. Chef Partner Mike Shinall answered the phone, and Fralick told him to tell Crichton that he wanted the day off. Fralick did not mention any "serious health condition" to Shinall. Fralick was released from his shift that day. Later that same day, Fralick was admitted to the hospital for attempting suicide. Fralick was released from all his shifts at Biaggi's from March 11 through March 15, 2015.

Biaggi's Managers Nathan Lane and Crichton both testified that they did not know Fralick attempted suicide until the current litigation. However, Fralick's former roommate, Kristina Hagan, testified that she informed Crichton on March 9, 2015, that Plaintiff attempted suicide and that he was admitted to the hospital. Kristina Hagan Dep. 97:3-25. Crichton and/or Lane released Fralick from all of his shifts that week, suggesting, at a minimum, that they knew something serious had happened.[4] *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 826 (7th Cir. 2012) (employer is on notice as long as it was alerted to the "seriousness of the health condition.") (quoting *Stevenson*, 505 F.3d at 725)). These facts are enough to create a genuine issue of material fact regarding whether Biaggi's was on notice of Fralick's

---

[4] *See Pagel*, 695 F.3d at 628 (noting that the lower court correctly found that "the notice inquiry is a 'fact-rich question ... perhaps best resolved by the trier of fact, particularly, where, as is the case here, the employer and employee dispute the quantity and nature of communications regarding the employee's illness.'") (quoting *Pagel v. TIN Inc.*, 832 F.Supp.2d 965, 972 (C.D.Ill.2011) (quoting *Burnett*, 472 F.3d at 479 n. 4)).

serious health condition. *See Preddie*, 799 F.3d at 817 (employer put on notice related to employee's absence where employee's wife emailed employer that he was hospitalized); *Pagel*, 695 F.3d at 629 (noting that it was "difficult" to imagine a scenario where an employee's "notice of hospitalization did not include an implicit demand for leave."); *Schmutte v. Resort Condominiums Intern., LLC*, 463 F.Supp.2d 891, 911 (S.D. Ind. 2006) (attempted suicide put employer on notice that employee may request FMLA leave).

Biaggi's argues that Fralick never raised the issue of FMLA leave with anyone at Biaggi's, but an employee need not expressly mention the FMLA or otherwise invoke any of its provisions. *Burnett*, 472 F.3d at 478. Indeed, "the employee can be completely ignorant of the benefits conferred by the Act: it is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed." *Stoops v. One Call Commc'ns.*, 141 F.3d 309, 312 (7th Cir.1998); *see Byrne v. Avon Prods., Inc.,* 328 F.3d 379, 382 (7th Cir.2003) ("It is enough under the FMLA if the employer knows of the employee's need for leave; the employee need not mention the statute or demand its benefits."). Fralick has produced enough evidence to show that Biaggi's was given sufficient information to put it on notice that Fralick likely had an FMLA-qualifying condition. That is all that is required to survive summary judgment. *See Pagel*, 695 F.3d at 628-29.

Fralick has also created a genuine issue of material fact concerning the fifth interference element. The issue, here, is whether a jury could find that Biaggi's did

not reinstate Fralick because he exercised his right to take FMLA leave. *See Goelzer*, 604 F.3d at 993; *Simpson v. Office of the Chief Judge of the Circuit Court of Will County*, 559 F.3d 706, 712 (7th Cir.2009) ("Firing an employee to prevent her from exercising her right to return to her prior position can certainly interfere with that employee's FMLA rights."). "[A]n employee is not entitled to return to her former position if she would have been fired regardless of whether she took the leave." *Goelzer*, 604 F.3d at 993.

Biaggi's contends that Lane did not terminate Fralick because of his alleged FMLA leave; rather, Lane terminated Fralick because of "Fralick's history of bad decision making before and after his hospitalization". (Doc. 42 at 34). Specifically, Biaggi's argues that Lane made the decision to terminate Fralick's employment after (1) Fralick was a no call/no show to their scheduled March 14 meeting; (2) Lane believed Fralick was instrumental in perpetuating the Shinall/Morrow rumor; (3) Lane believed Fralick was lying to him during their March 17 meeting by denying any involvement in the Shinall/Morrow rumor and providing a "nonsensical" explanation for his failure to call or show up to the March 14 meeting; and (4) Fralick's "increasing pattern" of coming to work hung over that affected his work performance. *Id.*

Fralick concedes that, at the March 17 meeting, he and Lane discussed Fralick's no call/no show for the March 14 meeting and the Shinall/Morrow rumor. However, Fralick also testified that Lane told Fralick he was being terminated for two absences, namely the absence related to his DUI from a few years ago and his

recent hospitalization. Fralick Dep. #2 76:1-77:15. Fralick's account is supported by the termination form associated with his termination. Lane checked "Absenteeism/Tardiness" as the reason for Fralick's termination, and wrote "absenteeism" in the "Notes" section. The form does not specify *which* absences and it does not list the Shinall/Morrow rumor, dishonesty, or coming to work hungover as a reason for termination. Def. Exh. B, Dep. Exh. 4. Lane states he only put one reason for termination in the paperwork because the computer system only permits one reason. Lane Dep. 93:17-94:5. But regardless of what the computer system allows, on the handwritten termination form, Lane clearly could have checked more boxes *and* provided more explanation in the "Notes" section which contains four lines for handwritten notes.

Furthermore, Biaggi's' Handbook provides that employment may be terminated for "excessive absenteeism . . . without a valid excuse." Several Biaggi's supervisors, including Lane, testified that "excessive absenteeism" means more than one absence. Lane Dep. 92:4-8 ("a single time of no show" would not be considered excessive); Clayton Baxter Dep. 39:5-11 ("absenteeism" would be "[i]f somebody's missing work on a regular basis"); Harry Crawford Dep. 44:20-23 (defining absenteeism as "multiple" absences). Manager Crichton also testified that he thought Fralick's explanation for not showing up to the March 14 meeting (because the restaurant was too busy) would constitute a "valid excuse" within the Handbook's meaning. Adam Crichton Dep. 103:12-104:1. Thus, terminating Fralick for failing to show up for the March 14 meeting is not supported by Biaggi's' policy.

Fralick's individual involvement in the alleged "perpetuation" of the Shinall/Morrow rumor is also disputed. Defendant's undisputed material facts indicate that another Biaggi's employee, Lisa Johnson-Dixon, told Morrow that "several Biaggi's employees were gossiping" about Morrow and Shinall being involved in a sexual relationship. Def.'s Undisputed Mat. Facts ¶ 36. Fralick and Hagan both deny that Fralick started the rumor, or that Fralick gossiped any more than other Biaggi's employees. Hagan Dep. 321:23-322:3; Fralick Dep #2: 130:2-4. There is no indication that any other employee was punished for gossiping, and gossiping was not mentioned as a reason for Fralick's termination on the termination form.

Biaggi's also fails to provide undisputed allegations that Fralick was rightfully fired for showing up to work hungover and performing poorly. A "decline in performance before the employee engages in protected activity does not allow for an inference of retaliation." *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 354 (7th Cir. 2009). But Defendant's undisputed material facts state that Fralick was a good server and many other employees, including Manager Crichton, testified to Fralick's abilities as a server. Def.'s Undisputed Mat. Facts ¶ 30; Crichton Dep. 27:7-15; Crawford Dep. 25:1-15 (testifying that Fralick was one of the highest selling servers). Lane did not check the box next to "alcohol/drug violation" as a reason for termination, nor did Lane mention alcohol/drug violations in the "Notes" section. There is also no indication that Lane and Fralick discussed Fralick showing up to work hungover as a reason for termination at the March 17 meeting.

Furthermore, just one month prior to Fralick's termination, Lane provided a lengthy letter of recommendation for Fralick wherein Lane stated that Fralick "quickly became an asset to our company," and that Fralick "rose through the service ranks very quickly and became one of our most valued employees." Pl.'s Exh. 1. It further noted that Fralick ranked in the top 10 of all Biaggi's' reports, and that he upheld Biaggi's' standards on a consistent basis. *Id.* Lane ended the letter giving "full[] support" to Fralick "in all aspects of his professional career". *Id.*; *see Goelzer*, 604 F.3d at 996 (where employee had received positive performance reviews and employer communicated termination decision only after employee took leave, summary judgment in defendant's favor not appropriate). Additionally, Fralick's personnel file did not contain any formal documentation indicating that he had been counseled or disciplined while employed at Biaggi's. In sum, the unrebutted evidence simply does not show that Plaintiff performed poorly because of his alleged pattern of showing up to work hungover. To the contrary, much of the evidence shows that Plaintiff performed well, belying this explanation as a reason for termination. There is a genuine issue of material fact regarding whether Biaggi's declined to reinstate Fralick because he exercised his right to take FMLA leave. *See id.* at 995 (where the court is left with two competing accounts concerning interference claim, either of which a jury could believe, summary judgment is not appropriate). Summary judgment on Fralick's interference claim is DENIED.

### III. Plaintiff's Retaliation Claim

Fralick's retaliation claim is very closely linked to his FMLA interference claim. To survive summary judgment on his FMLA retaliation claim, Fralick must submit evidence showing that Biaggi's fired him because he took valid leave. *Preddie*, 799 F.3d at 819. "A retaliation claim requires proof of discriminatory or retaliatory intent, which can be established directly or indirectly." *Nicholson*, 690 F.3d at 828; *see Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008) ("The first of these methods of proof—proffering evidence of a retaliatory motive—is referred to as the 'direct method.' The second method of proof—comparing . . . treatment to that of a similarly situated employee—is called the 'indirect method.'"). Plaintiff proceeds under both the direct and indirect methods of proof.

Under the direct method of proof, Fralick is required to show: (1) Fralick was engaged in a protected activity; (2) Biaggi's took adverse employment action against him; and (3) there is a causal connection between Fralick's protected activity and Biaggi's' adverse employment action. *Curtis*, 807 F.3d at 220.

The first two elements of Fralick's retaliation claim are established. Fralick was engaging in a protected activity[5] because he suffered from a serious health condition that made him unable to perform the functions of his position. *See Pagel*, 695 F.3d at 627-31 (employee is engaging in statutorily protected activity if he is entitled to FMLA leave). And termination of Fralick's employment unquestionably

---

[5] While "notice" is not an express element of a *prima facie* FMLA retaliation claim, the Seventh Circuit has indicated that if an employee fails to provide sufficient notice of the need for FMLA-qualifying leave, she never engaged in any activity protected by the FMLA. *Nicholson*, 690 F.3d at 828. However, because the Court has already held that a genuine issue of material fact exists regarding whether Fralick provided sufficient notice, the Court assumes for purposes of Fralick's retaliation claim that Fralick was engaging in a protected activity.

satisfies the second element. *See id.* at 631 (An "employer cannot use an employee's use of FMLA leave as a negative factor in promotion, termination, and other employment decisions.").

Biaggi's challenges the third element, arguing that Fralick cannot demonstrate that "but for" his alleged invocation of FMLA leave, Biaggi's would not have terminated his employment. Biaggi's argues that but-for causation should apply in FMLA retaliation cases, but the Seventh Circuit has not resolved what type of causation should apply. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 563 n. 3 (7th Cir. 2014). In any event, Fralick need not prove that retaliation was the only reason for his termination; he may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision. *Id.* Fralick can establish a causal nexus either with a direct admission from Biaggi's or "a convincing mosaic of circumstantial evidence." *Pagel*, 695 F.3d at 631. "The convincing mosaic of circumstantial evidence may include suspicious timing, ambiguous statements from which a retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Id.* (citing *Jajeh v. County of Cook*, 678 F.3d 560, 570 (7th Cir. 2012)). Suspicious timing alone is not enough to get past a motion for summary judgment. *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011).

As described above, Biaggi's has provided its explanation for Fralick's termination decision: Fralick was a no call/no show for the March 14 meeting with

Lane, Lane suspected Fralick was spreading rumors about Shinall and Morrow, Lane suspected Fralick was lying to him, and Fralick showed up hungover to work, causing poor performance. However, Fralick provides a competing explanation for his termination: Lane told him that he was being terminated for his DUI-related absence two years before and his recent FMLA-qualifying hospitalization. Fralick's explanation is supported by the termination paperwork which only cites "absenteeism" as the reason for termination. The termination paperwork does not cite dishonesty, gossiping, poor performance, or being hung over at work despite room on the handwritten form to do so. His explanation is also supported by the fact that Biaggi's Handbook requires "excessive absenteeism" for termination, suggesting that Lane's proffered explanation for what "absenteeism" meant on Fralick's termination paperwork would be against company policy. Furthermore, much of the evidence in this case suggests that Fralick was an excellent server, contradicting any claim that his work performance was poor. A jury might well choose to believe either account.

These facts, combined with the suspicious timing of Fralick's termination—four days after being released from the hospital and immediately when he tried to return to work—are sufficient to create a genuine issue of material fact under the direct method of proof that is better addressed at trial. Summary judgment on Plaintiff's retaliation claim is likewise DENIED. *See Gable v. Mack Trucks, Inc.*, 185 F.Supp.3d 1055, 1060-61 (N.D. Ill. 2015) (denying summary judgment where employee was fired on first day back after FMLA leave and where employee presented evidence that employer's stated reason for firing her was pretextual); *see also*

*Coleman v. Donahoe,* 667 F.3d 835, 852–53 (7th Cir. 2012) (remanding where the plaintiff identified weaknesses, implausibilities, inconsistencies, and contradictions in the employer's explanation for the discharge); *Carter v. Chi. State Univ.*, 778 F.3d 651, 659 (7th Cir. 2015) (to show pretext, a plaintiff can provide evidence "tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the [employer's action.]").[6]

Plaintiff cannot, however, proceed under the indirect method of proof. Under the indirect, burden-shifting method of proving retaliation, Fralick must establish a *prima facie* case by proving that he (1) engaged in a statutorily protected activity; (2) met Biaggi's' legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). Once the *prima facie* case is established, the burden shifts to Biaggi's to produce a non-discriminatory reason for its action; if Biaggi's meets this burden, the burden shifts back to Fralick to demonstrate that the proffered reason is pretextual. *Id.* (citing *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007). Fralick has failed to satisfy the fourth element.

---

[6] Under the direct method, a plaintiff must present evidence that her employer took a materially adverse action against her because of her protected activity. *Burnett*, 472 F.3d at 481. If the plaintiff's evidence is contradicted, the case **must proceed to trial** unless the employer presents **unrebutted** evidence that it would have taken the adverse action against the plaintiff even if it did not have a retaliatory motive. *Id.* (citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir.2002)). Biaggi's simply has not presented unrebutted evidence to that effect.

"To determine whether two employees are directly comparable, a court looks at all the relevant factors, which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). While Fralick makes general allegations that he was punished for gossiping while other employees were not, he fails to show that at least one other Biaggi's employee is "directly comparable to him *and* did not take FMLA leave." *See Hull v. Syoughton Trailers, LLC.*, 445 F.3d 949, 952 (7th Cir. 2006) (plaintiff failed under indirect method of proof where he failed to present any evidence that would allow a meaningful comparison between him and another employee). Therefore, Plaintiff may only proceed on his retaliation claim under the direct method of proof.

## CONCLUSION

For the reasons stated above, Biaggi's' Motion for Summary Judgment (Doc. 42) is DENIED.


Entered this 20th day of December, 2017.


s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
